### E. SOHIER WELCH, trustee, *vs.* HERBERT P. WILLIAMS & others.

Suffolk.    December 2, 3, 1920. — January 25, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trust,* Construction of trust instrument. *Devise and Legacy,* Contingent estate.

A testator, who in his will ordered "that no one who is not of my blood take or have any of my trust property or estate," directed that, on the death of his wife, of a certain annuitant, and of the last survivor of his children, a trust estate established by his will should be given in equal shares to each of his grandchildren then living and to the lawful issue of each grandchild who had deceased, by right of representation; and that the share to be received by one designated grandson should be held in trust for him and, upon his death, should be "paid equally to my other grandchildren and to the lawful issue and legal descendants in manner and proportion as herein before has been ordered in the

division to be made" and that, if none of "my other grandchildren should be living then I order that his share be divided and conveyed equally to each of my great grandchildren then living." At the time of the death of the testator's widow, the annuitant and the survivor of his children, fourteen grandchildren were living, including the designated grandson, and none had died leaving issue. All of these grandchildren were living at the death of the designated grandson except one granddaughter who had assigned her interest in the trust to a banking institution and had died without issue. *Held,* that the trust estate should be distributed equally among the twelve grandchildren of the testator living at the death of the designated grandson, to the exclusion of the assignee and the administrator of the estate of the granddaughter who had predeceased the grandson.

BILL IN EQUITY, filed in the Probate Court on April 26, 1920, by the surviving trustee under the will of Samuel K. Williams, late of Boston, for instructions.

The suit was heard in the Probate Court upon the bill and answers by *Prest,* J., who by consent of the parties found the facts to be as alleged in the bill. Material facts are described in the opinion. By order of the judge a decree was entered ordering a distribution which included twelve grandchildren of the testator and excluded the assignee and the administrator of the estate of Grace P. Williams, a grandchild who had died before the time of distribution. The assignee and the administrator of the estate of Grace P. Williams appealed.

*H. S. Davis,* for the assignee and the administrator of the estate of Grace P. Williams.

*F. H. Chase,* for certain grandchildren of the testator.

*A. D. Radley,* for representatives of the estate of Edgar N. Williams, a deceased grandchild of the testator, submitted a brief.

CARROLL, J. The testator gave his residuary estate in trust for the benefit, except as to a small annuity, of his wife and of his children and their issue. Upon the death of the annuitant, the testator's wife, and the last survivor of his children, the trust estate was to be given in equal shares to each of his grandchildren then living, and to the lawful issue of each grandchild who had deceased, such issue to take by way of representation the share of the deceased parent. George Gorham Walbach, one of his grandchildren, was then living. His share by the terms of the will was to remain in trust. Upon his death without issue it was to be "paid equally to my other grandchildren and to the lawful

issue and legal descendants in manner and proportion as herein-
before has been ordered in the division to be made." And if none
of "my other grandchildren should be living then I order that
his share be divided and conveyed equally to each of my great
grandchildren then living." On the death of the annuitant and
the testator's wife and the survivor of his children in December,
1910, there were fourteen living grandchildren of whom one was
Walbach and another Grace P. Williams, and no living issue of
a deceased grandchild. Grace P. Williams died without issue in
1917, having previously assigned all her interest in the trust
estate to the Bankers Trust Company upon certain trusts. Wal-
bach died on June 27, 1919, without ever having issue, and the
question raised by this petition for instructions is whether his
share is to be divided into thirteen parts, one of which shall go
to the assignee of Grace P. Williams, or whether distribution is
to be confined to the grandchildren living at the death of Wal-
bach. In the Probate Court a decree was made directing the
division into twelve parts, to the exclusion of those claiming
under Grace P. Williams. From this decree the Bankers Trust
Company and Francis Speir, the representative of the estate of
Grace P. Williams, appealed.

The testator intended, on the death of his wife, the annuitant
and the last survivor of his children, that the remainder was to
go to his grandchildren who were then living. *Carr* v. *New Eng-
land Anti-Vivisection Society*, 234 Mass. 217, and cases cited.
Walbach's share which had been set aside to his trustees as pro-
vided in the will, was, upon his death without issue, to be divided
among the testator's "other grandchildren . . . in manner and
proportion as herein before has been ordered in the division to be
made." The "other grandchildren" here referred to were not
the grandchildren living at the time of the first division and who
received their shares absolutely. The other grandchildren were
the grandchildren who were alive at the time of Walbach's death,
and the grandchildren who died before Walbach, were excluded.
In *Crapo* v. *Price*, 190 Mass. 317, 321, 322, a fund was given in
trust to pay the income to Keziah Price during her life; on her
death the principal fund was to be divided among her children
and the issue of any deceased child by right of representation, the
issue to take the share which would have belonged to their de-

ceased parent. It was there decided that "By directing the final payment and division to be made among beneficiaries thus to be ascertained, the testatrix, according to the natural import of her words, has excluded those children who should die during the life estate without leaving issue. Plainly, some of these beneficiaries, the issue of deceased children, cannot be determined until the death of the life tenant; and this affords a strong indication that all of the beneficiaries are to be then determined. It is only after the decease of Keziah Price that the trustees are directed to make the final payment and distribution. . . . The fact that, as here, some of the legatees in remainder could not be ascertained until after the termination of the life estate, has been regarded as having a strong tendency to show that all the remaindermen must be ascertained at that time, so that all the remainders were contingent."

The issue of the deceased grandchildren who were to share in the remainder after Walbach's death could not be determined until that event took place; and by this provision providing for the final division among the remaindermen then to be ascertained, the testator intended to exclude the grandchildren who should die during the life estate without leaving issue. *Crapo* v. *Price, supra.* The final payment was to be in manner and proportion as in the first division of the estate. In that division the payment was to be made to his then living grandchildren, and the final payment was to be made in the same manner to his grandchildren then living and the living issue of deceased grandchildren. The remainder was to be paid to his "other grandchildren." By this language it was intended to benefit the grandchildren who survived Walbach. The gift over on his death was not limited to the grandchildren who at the time of the first division received their proportion absolutely. The "other grandchildren" were to be determined when the time came for the vesting of the remainder in the same manner as the remaindermen had been previously determined; and as Grace P. Williams died without issue before the event took place when the remaindermen were to be ascertained, those claiming under her are not entitled to share in the gift over.

This conclusion is supported by other parts of the will. In the paragraph providing for the division of the estate on Walbach's

death, it is ordered that if "none of my other grandchildren should be living" the remainder was to be divided equally among the testator's great grandchildren then living. This indicates that if any of the testator's grandchildren were living at the decease of Walbach, the division was to be among them. And by "other grandchildren" in the sentence directing that if none of the other grandchildren should be living the remainder was to pass to the great grandchildren then living, the testator had in mind the same class described in the preceding sentence of this paragraph as "my other grandchildren," and meant by this expression the grandchildren then living. That he intended to fix Walbach's death as the time when the remainders were to vest, is also shown by the provision that in case none of the grandchildren should survive this event, the division was to be made equally among the great grandchildren "then living."

It further appeared that the testator desired that the distribution should be made to his blood descendants. He directed "I would not have it inferred from any words in this my will that I have made any provision for any descendant of mine beyond that of my great grandchildren. And I will and order that no one who is not of my blood take or have any of my trust property or estate."

In our opinion the plan of the will shows it was intended that the grandchildren who were alive at Walbach's decease should have the remainder. *Crapo* v. *Price, supra. Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35, 39. *Denny* v. *Kettell,* 135 Mass. 138.

*Decree of the Probate Court affirmed.*